**SLIP OP 12 -** 47

**UNITED STATES COURT OF INTERNATIONAL TRADE**

<table>
<tr>
<td>

MACLEAN-FOGG COMPANY, *et al.*,

        Plaintiffs,

          v.

UNITED STATES,

        Defendant.

</td>
<td>

Before: Donald C. Pogue,
       Chief Judge

Consol. Court No. 11-00209

</td>
</tr>
</table>

<u>OPINION</u>

[Commerce's all-others countervailing duty rate REMANDED.]

Dated: April 4, 2012

    <u>Mark B. Lehnardt</u>, Lehnardt & Lehnardt LLC, of Liberty, MO, for the Plaintiff-Intervenors Eagle Metal Distributors, Inc. and Ningbo Yili Import and Export Co., Ltd.

    <u>Craig A. Lewis</u>, <u>Theodore C. Weymouth</u>, and <u>Brian S. Janovitz</u>, Hogan Lovells US LLP, of Washington, DC, for the Plaintiff-Intervenor Evergreen Solar, Inc.

    <u>Thomas M. Keating</u>, and <u>Lisa M. Hammond</u>, Hodes, Keating and Pilon, of Chicago, IL, for Plaintiffs Maclean-Fogg Co. and Fiskars Brands, Inc.

    <u>Tara K. Hogan</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for the Defendant. With her on the briefs were <u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director; and <u>Reginald T. Blades Jr.</u>, Assistant Director. Of counsel on the briefs were, <u>Joanna Theiss</u>, Office of the Chief Counsel for Import Administration, United States Department of Commerce, and

    <u>Stephen A. Jones</u>, <u>Christopher T. Cloutier</u>, <u>Daniel L. Schneiderman</u>, <u>Gilbert B. Kaplan</u>, <u>Joshua M. Snead</u>, and <u>Patrick J. Togni</u>, King and Spalding LLP, of Washington, DC, for the Defendant-Intervenor Aluminum Extrusions Fair Trade Committee.

**Pogue, Chief Judge**: In this action, Plaintiffs, four domestic importers and one exporter of extruded aluminum, challenge the all-others countervailing duty ("CVD") rate set by the Department of Commerce ("the Department" or "Commerce") in its investigation of their goods imported from the People's Republic of China.  We have jurisdiction under Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. 1516a(a)(2)(B)(i)(2006)[1] and 28 U.S.C. § 1581(c).

After a brief review of the relevant background and applicable standard of review, the court will explain why it concludes that Commerce has not presented, for its rate choice, a logical basis or explanation which considers the important aspects of the problem presented.  Accordingly, the all-others rate is remanded for reconsideration.

### BACKGROUND

This case arises from Commerce's initiation of companion CVD and antidumping ("AD") investigations into various Chinese exporters and producers of aluminum extrusions.[2]  See Aluminum

---

[1] All further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

[2] The merchandise covered by the investigation are aluminum shapes and forms created by the extrusion process and made from aluminum alloys which correspond to the Aluminum Association designations beginning with the numbers 1, 3, or 6.  Final Determination, 76 Fed. Reg. at 18,521.  These forms are produced in a variety of shapes, ranging from solid to hollow profiles in

Extrusions from the People's Republic of China, 75 Fed. Reg. 22,114 (Dep't Commerce Apr. 27, 2010) (Initiation of Countervailing Duty Investigation) ("CVD Initiation").  Because Commerce's investigation involved 114 potential exporter/producers ("respondents"), Aluminum Extrusions from the People's Republic of China, 76 Fed. Reg. 18,521 (Dep't Commerce Apr. 4, 2011) (Final Affirmative Countervailing Duty Determination) ("Final Determination") and accompanying Issues and Decision Memorandum ("I&D Memo") at Comment 10 (Mar. 28, 2011), Commerce initially selected the three largest respondents by volume as mandatory respondents.[3]  However, none of these

---

pipes, tubes, bars, and rods.  They may also be prepared for assembly by being cut-to-length, machined, drilled, punched, notched, bent, stretched, knurled, swedged, mitered, chamfered, threaded, and spun.  Id.

[3] Where there is such a large number of potential respondents, the statute permits Commerce to select either a statistically valid set of exporters and producers or those that are the largest by volume.  See 19 U.S.C. § 1677f-1(e)(2):

> If the administering authority determines that it is not practicable to determine individual countervailable subsidy rates under paragraph (1) because of the large number of exporters or producers involved in the investigation or review, the administering authority may--
>
> (A) determine individual countervailable subsidy rates for a reasonable number of exporters or producers by limiting its examination to--
>
> > (i) a sample of exporters or producers that the administering authority determines is statistically valid based on the information available to the

three mandatory respondents responded to Commerce's initial questionnaire.  See Respondent Selection Memorandum at 4, May 18, 2010, ECF No. 39, Tab D (citing 19 U.S.C. § 1677f-1(e)(2)) ("Respondent Selection Memo"); I&D Memo, Section VI at 5. Commerce therefore found that these mandatory respondents "withheld requested information and significantly impeded [the] proceeding."  I&D Memo, Section VI.  Commerce further found that because the three mandatory respondents failed to act to the best of their abilities in the investigation, an adverse inference was warranted, such that Commerce would use adverse facts available ("AFA") in calculating their countervailing duty rate.  Commerce intended to calculate an AFA rate to ensure the mandatory respondents did not obtain a more favorable rate than if they had cooperated with Commerce's request for information.  Id. (relying on and citing 19 U.S.C. § 1677e(b)).

Accordingly, and citing its longstanding practice, in calculating, for the three mandatory respondents, an AFA CVD

---

administering authority at the time of selection, or

(ii) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that the administering authority determines can be reasonably examined; or

(B) determine a single country-wide subsidy rate to be applied to all exporters and producers.")

rate, Final Determination, 76 Fed. Reg. at 18,523,[4] Commerce selected the "highest calculated rate in any segment of the proceeding." Aluminum Extrusions from the People's Republic of China, 75 Fed. Reg. 54,302, 54,305 (Dep't Commerce Sep. 7, 2010) (preliminary affirmative countervailing duty determination) ("Preliminary Determination") (citing Laminated Woven Sacks From the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination, in Part, of Critical Circumstances, 73 Fed. Reg. 35,639 (Dep't Commerce June 24, 2008)). More specifically, Commerce typically uses the highest program-specific rates calculated for cooperating respondents in the current or in prior CVD proceedings. Here, Commerce used the "highest calculated subsidy rate for any program otherwise listed that could conceivably be used by the non-cooperating companies" and arrived at a final rate of 374.15% for each of the three mandatory respondents.[5] Id. at 54,305; Final Determination, 76 Fed. Reg. at 18,523.

Two other companies submitted responses and were chosen by

---

[4] Commerce, pursuant to its statutory mandate, uses information derived from the petition, final determination, any previous review or determination and/or any other information placed on the record. Preliminary Determination, 75 Fed. Reg. at 54, 304 (citing 19 U.S.C. § 1677e(b) and 19 C.F.R. § 351.308(c)(1) and (2).

[5] In its preliminary determination, Commerce calculated an AFA rate of 137.65%. Preliminary Determination, 75 Fed. Reg. at 54,320–21.

Commerce to participate in the investigation as voluntary respondents:   Zhaoqing New Zhongya Aluminum Co., Ltd., Zhongya Shaped Aluminum HK Holding Ltd., and Karlton Aluminum Company Ltd. (collectively "Zhongya") and Guang Ya Aluminum Industries Co., Ltd., Foshan Guangcheng Aluminum Co., Ltd., Guang Ya Aluminum Industries Hong Kong, Kong Ah International Company Limited, and Yongji Guanghai Aluminum Industry Co., Ltd. (collectively "Guang Ya").   In the final determination, Commerce issued a final CVD rate of 8.02% *ad valorem* for Zhongya, and 9.94% *ad valorem* for Guang Ya.   Final Determination, 76 Fed. Reg. at 18,522–23.[6]

Having calculated rates for the mandatory and voluntary respondents, Commerce then calculated the CVD rate for the remaining "all-other" respondents, arriving at a rate of 374.15%. Final Determination, 76 Fed. Reg. at 18,822–23.  This rate is identical to and calculated as a weighted average of the AFA rates Commerce issued for the three non-cooperating mandatory respondents.  In choosing to use the weighted average of the rates determined for the mandatory respondents, Commerce excluded the rates calculated for the voluntary respondents.  In doing so, Commerce relied on 19 C.F.R. § 351.204(d)(3) which permits

---

[6] Unlike the AFA rate, the final voluntary respondents' rates did not differ significantly from the preliminary rates, which were 10.37% *ad valorem* and 6.18% *ad valorem* respectively. See Preliminary Determination, 75 Fed. Reg. at 54,321.

Commerce to exclude any rates calculated for voluntary respondents when calculating the all-others rate.  I&D Memo, Section XI, Comment 9 at 54; 19 C.F.R. § 351.204(d)(3).

Plaintiffs allege that when averaging rates to calculate the all-others rate, Commerce's decision to omit any rates calculated for voluntary respondents is expressly prohibited by the governing statute, 19 U.S.C. § 1671d(c)(5)(A)(i)-(ii) ("section 1671d").  Plaintiffs also contend that 19 C.F.R. § 351.204(d)(3) is invalidly promulgated in light of the alleged lack of ambiguity of the statute.  Finally, Plaintiffs assert that Commerce's chosen methodology is unreasonable and not supported by substantial evidence.

## STANDARD OF REVIEW

When reviewing Commerce's "determinations, findings or conclusions" in a countervailing duty investigation, the Court determines whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence is evidence which, considering the record as a whole, "a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477, 491 (1951) (citing Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  In presenting its findings, the agency must explain its standards and "rationally connect them to the conclusions drawn from the

record." <u>U.S. Steel Corp. v. United States</u>, Slip Op. 10-104, 2010 Ct. Intl. Trade LEXIS 107 (CIT Sep. 13, 2010) at *4 (citing <u>Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43(1983); <u>Matsushita Elec. Indus. Co. v. United States</u>, 750 F.2d 927, 933 (Fed. Cir. 1984)). The conclusion Commerce reaches need not be the best or only possible conclusion, merely a reasonable one. See <u>Lifestyle Enterprise, Inc. v. United States</u>, Slip-Op 11-16, 2011 WL 637667 at *10 (CIT Feb. 11, 2011).

## DISCUSSION

Because Plaintiffs' first two claims are related, the court will consider them in Part A below, and then turn to Plaintiffs' remaining claim in Part B.

### A.

Plaintiffs first raise a straightforward <u>Chevron</u> challenge,[7]

---

[7] Under this familiar standard, when the court reviews an agency's statutory interpretation, it must first determine whether Congress "has directly spoken to the precise question at issue." <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842 (1984). If Congress has clearly expressed its intent on the issue, then the court must give effect to this unambiguous intent. <u>Chevron</u>, 467 U.S. at 842–43. If the court finds that "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's interpretation is based on a permissible construction of the statute." <u>Id.</u> at 843. In this "second step" review, the court must look to the structure and language of the statute as a whole. <u>K Mart Corp. v. Cartier, Inc.</u>, 486 U.S. 281, 291 (1988); <u>Sullivan v. Everhart</u>, 494 U.S. 83, 89 (1990). If it

asserting that section 1671d unambiguously requires that the all-others rates be based on all "individually investigated" respondents and therefore Commerce erred by excluding voluntary respondents from the calculation of the all-others rate.

Section 1671d states, in relevant part:

[T]he all-others rate shall be an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and de minimis countervailable subsidy rates, and any rates determined entirely under section 1677e.[8]

If the countervailable subsidy rates established for all exporters and producers individually investigated are zero or de minimis rates, or are determined entirely under section 1677e of this title, the administering authority may use any reasonable method to establish an all-others rate for exporters and producers not individually investigated, including averaging the weighted average countervailable subsidy rates determined for the exporters and producers individually investigated.

19 U.S.C. § 1671d(c)(5)(A)(i)-(ii).

---

determines that the agency's interpretation is reasonable, then the court must uphold that interpretation, even if the court does not believe it to be the best statutory interpretation. Adair v. United States, 497 F.3d 1244, 1252 (Fed. Cir. 2007) (citing Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 980 (2005)); Chevron, 467 U.S. at 842-43; Zenith Radio Corp. v. United States, 437 U.S. 443, 450 (1978).

[8] Section 1677e refers to rates for the mandatory respondents that are calculated, as here, with adverse facts available. 19 U.S.C. § 1677(e).

Plaintiffs assert that the statute is unambiguous and clearly refers to all individually investigated respondents, whether mandatory or voluntary.  They urge the court to read the statute as establishing only two distinct categories of respondents: those that are individually investigated and those that are not.  Plaintiffs' Br. at 17, Oct. 31, 2011, ECF No. 29 (referring to 19 U.S.C. § 1671d(c)(5)(A)(i)).

But the statute does not say "all."  Nor does the statute clearly specify which particular subset of respondents Commerce is to rely upon when setting the all-others rate.  While section 1671d does refer to "individually investigated" respondents, Congress does not define "individually investigated" as used in 19 U.S.C. § 1671d(c)(5)(A)(i)-(ii), see 19 U.S.C. § 1202 *et seq*, and the statutory language does not articulate the exact sources from which Commerce is required to extract data when making its calculations.

Plaintiffs contend that because Congress did not differentiate between mandatory and voluntary respondents in section 1671d, but did so in other portions of the statute, it must have intended all individually investigated respondents, whether mandatory or not, to be encompassed by the statutory language.  Plaintiff's Br. at 17.

Plaintiffs are correct insofar as they claim that the court

is to read a statutory provision in the context of the statute as a whole. See Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). But the statute as a whole includes another provision, 19 U.S.C. § 1677f-1(e), which at least suggests that Congress intended for Commerce to, in some reasonable way, use rates from mandatory respondents when calculating the all-others rate under section 1671d. See 19 U.S.C. § 1677f-1(e). Section 1677f-1(e) states that when there are too many importers or producers to make it practical for Commerce to set individual CVD rates, "individual countervailable subsidy rates determined under subparagraph (A) shall be used to determine the all-others rate under section 1671d(c)(5)." Subparagraph (A) sets forth the process by which Commerce selects mandatory respondents. 19 U.S.C. § 1677f-1(e). In light of this provision, Plaintiffs' contention that section 1671d unambiguously refers to all individually investigated respondents, whether mandatory or voluntary, fails. See Union Steel v. United States, __ CIT __, Slip Op. 12-24 (Feb. 27, 2012) at *17–19 (holding that the term "weighted average dumping margin" is not so specific as to require a particular calculation). Rather, Commerce correctly concludes that the

statute is ambiguous.  Antidumping Duties; Countervailing Duties,

62 Fed. Reg. 27,296, 27,351 (Dep't Commerce May 19, 1997) (Final

Rule) ("Preamble").

In their second and related claim, Plaintiffs assert that

because section 1671d is unambiguous, Commerce therefore

invalidly promulgated and relied on 19 C.F.R. § 351.204(d)(3).

Commerce responds that the regulation was validly promulgated and

necessary to fill the uncertainty created by the statute.

Commerce explains that when it was promulgating 19 C.F.R.

§ 351.204(d)(3), it looked to Article 9.4 of the World Trade

Organization ("WTO") Antidumping Agreement for guidance.  That

Article contemplates "parallel proceedings for voluntary

respondents."  Commerce also states that, for policy reasons, it

excluded voluntary respondents' rates from its all-others

calculation.  Gov't Response at 17–19, Jan. 4, 2012, ECF No. 33.

All parties agree that the WTO Subsidies and Countervailing

Measures Agreement, which governs countervailing duty measures,

contains no provision parallel to Article 9.4 of the WTO

Antidumping Agreement.  The parties, however, arrive at two

different conclusions from this difference.  Plaintiffs contend

that the absence of such a provision, in the Subsidies Agreement,

indicates that the Antidumping Agreement should have no bearing

on a CVD investigation.  Commerce, on the other hand, relies on

legislative history to conclude that Congress believed it was "appropriate to treat voluntary responses in countervailing duty investigations in a similar manner." Gov't Response at 19 (citing S.R. 103-412 at 83 (1984)). Commerce further argues that voluntary respondents are unrepresentative of the remaining companies because of the incentives in the statute. Commerce contends that respondents will voluntarily seek review only when, knowing their own commercial practices, they have good reason to believe that their rates will be lower than those set for the mandatory respondents, regardless of whether those mandatory respondents are cooperative or not. Gov't Response at 24. Therefore, Commerce reasons, including rates from a "self selected group" such as the voluntary respondents, would "be expected to distort the weighted-average for the respondents selected by the Department on a neutral basis." Gov't Response at 22 (citing Preamble, 62 Fed. Reg. at 27,310).

This explanation for promulgating and relying on 19 C.F.R. § 351.204(d)(3) is reasonable. As the WTO Subsidies and Countervailing Measures Agreement is silent on the issue, 19 C.F.R. § 351.204(d)(3) was validly promulgated as a reasonable interpretation of 19 U.S.C. § 1671d(c)(5)(A).[9]

---

[9] Plaintiffs also argue that the final all-others rate chosen by Commerce, 374.15%, amounts to an unlawful application of an AFA rate because it is identical to the AFA rate but was imposed without the statutorily required finding of non-

**B.**

Our decision that the establishment of an all-others rate is not controlled by the Plaintiffs' reading of the statute's provisions, and to uphold Commerce's regulation, is not the end of the matter.  Nor is it conclusive either that Commerce's regulation permits it not to include, in its all-others calculation, CVD rates calculated for voluntary respondents, 19 CFR § 351.204(d)(3), or that Commerce is permitted to use the individual AFA subsidy rates determined for the high-volume mandatory respondents in its establishment of an all-others rate. 19 U.S.C. §1677f-1(e).  This is because the statute also requires that Commerce must use a "reasonable method" for establishing that all-others rate. 19 U.S.C. §1671d(c)(5)(A)(ii).[10]

The issue therefore is whether Commerce's decision to calculate the all-others rate using the weighted average of the rates determined for the mandatory respondents, all of whom were

cooperation.  Plaintiff's Br. at 26–27.  The statute, however, expressly allows Commerce to use facts available rates, at least in some reasonable way, to calculate the all-others rates.  19 U.S.C. § 1671d(c)(5)(A)(ii).  Therefore, Plaintiff's argument is unavailing.

[10] As noted above, section 1671d provides for Commerce to "use any reasonable method to establish an all-others rate for exporters and producers not individually investigated" when the rates determined for exporters and producers is zero, *de minimis*, or calculated entirely under AFA.  19 U.S.C. § 1671d(c)(5)(A)(i)–(ii).

non-cooperative and therefore received AFA rates, is

reasonable.[11]

We begin our analysis of whether Commerce's method used here

was reasonable with a brief consideration of the two prior agency

decisions upon which Commerce relies, Certain Potassium Phosphate

Salts from the PRC, 75 Fed. Reg.  30,375 (Dep't Commerce Jun. 1,

2010)(Final Affirmative Countervailing Duty Determination and

Termination of Critical Circumstances Inquiry) ("Phosphate Salts

From the PRC") and Raw Flexible Magnets from the People's

Republic of China, 73 Fed. Reg. 39,667 (Dep't Commerce Jul. 10,

2008) (Final Affirmative CVD Determination) ("Flexible Magnets

from the PRC").  Neither of these investigations involved

voluntary respondents; rather the record was limited to mandatory

respondents.  Accordingly, these cases are not precedent for the

decision here, and thus do not provide a basis for Commerce's

choice.

Aside from its reliance on Phosphate Salts from the PRC and

Flexible Magnets from the PRC, and after rejecting the arguments

of the parties regarding its selection of an all-others rate,

ultimately, Commerce states that it made the choice to set the

all-others rate as equal to the AFA rate "[b]ecause there were no

---

[11] Plaintiffs also challenge Commerce's preliminary all-others rate.  However, the court's jurisdiction under 28 U.S.C. § 1581(c) is to review final agency action.

calculated rates for individually investigated mandatory respondents on this record." I&D Memo, Comment 9 at 52. But this was a situation of Commerce's own making. Nothing prevented Commerce from identifying other respondents for mandatory investigation.

Moreover, the rates for voluntary respondents were on the record. While Commerce was permitted not to use the voluntary respondents' rates in setting the all-others rate, these rates nonetheless demonstrate that the AFA rate was not attributable to all respondents. Similarly, while Commerce was permitted to recognize that the remaining or all-other producers/exporters had chosen not to seek voluntary respondent status, and thus could not assume or rely on being granted a rate based on the voluntary respondents' rates, there is nothing on the record here that indicates that the AFA rate is attributable to these other parties.

Commerce disputes this aspect of the Plaintiffs' challenge by noting that Plaintiffs have been unable to cite case law which holds that an all-others rate must be corroborated. But this argument misses the point. Administrative law is rooted in the reasonableness standard, and this standard applies with equal force regardless of whether the issue originates in an antidumping or countervailing duty investigation.

Certainly it is the parties' responsibility to create a record from which Commerce may decide the issues presented. See QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("Although Commerce has authority to place documents in the administrative record that it deems relevant, 'the burden of creating an adequate record lies with [interested parties] and not with Commerce.'" (alteration in original) (quoting Tianjin Mach. Imp. & Exp. Corp. v. United States, 16 CIT 931, 936, 806 F. Supp. 1008, 1015 (1992)). Here, the Plaintiffs chose to leave Commerce with the difficult task of selecting an all-others rate with limited information before it.

Nonetheless, there is nothing in Commerce's decision which indicates a logical connection between the AFA rate and Commerce's conclusion to apply that rate to the remaining parties. See Burlington Truck Lines Inc. v. United States, 371 U.S. 156, 168 (1962)(requiring a rational connection between the facts found and the choice made). There is nothing to indicate that Commerce "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." Id.; see also, China Kingdom Imp. & Exp. Co. v. United States, 31 CIT 1329, 1358 (2007) (Commerce has a responsibility to ensure accuracy of rates).

Here Commerce chose to select the largest

exporters/producers by volume as mandatory respondents rather than to select a representative, valid sample of exporters/producers as permitted by 19 U.S.C. § 1677f-1(e)(2)(A)(i). Respondent Selection Memo at 4. While this choice is permitted by law, 19 U.S.C. § 1677f-1(c)(2)(B), having made such a choice – and having chosen not to select a representative, valid sample – Commerce cannot then claim that the rates determined for the large volume respondents are representative of other exporters/producers. Similarly, while Commerce's regulation states that the all-others rate shall exclude the weighted average of the voluntary respondents' rates, that regulation does not provide a basis for asserting that the mandatory respondents' AFA rate is appropriate for other exporters/producers.

Finally, an AFA rate is to be remedial, not punitive. KYD, Inc. v. United States, 607 F.3d 760, 767–78 (Fed. Cir. 2010). Nothing on the record here indicates that Commerce considered how to serve this purpose in selecting the applicable all-others rate in this case. Thus Commerce, in making its choice, failed to consider an important aspect of the problem presented. Motor Vehicles Mfrs. Ass'n, 463 U.S. at 43.

In this case, Commerce is required to make a reasonable decision, considering the important aspects of the problem

presented, and explain why that decision complies with the statutory reasonableness requirement.  We remand to give it the opportunity to do so.

**CONCLUSION**

For the forgoing reasons, Commerce's calculations are REMANDED.

Commerce shall have until May 4, 2012 to complete and file its Remand Results.  Plaintiffs, Plaintiff-Intervenors, and Defendant-Intervenor shall have until May 18, 2012 to file comments.  Plaintiffs, Plaintiff-Intervenors, Defendant, and Defendant-Intervenor shall have until May 30, 2012 to file any reply.

It is **SO ORDERED.**


                                    /s/ Donald C. Pogue
                              Donald C. Pogue, Chief Judge

Dated: April 4, 2012
       New York, New York