Opinion for the court filed by Circuit Judge CLEVENGER. Dissenting opinion filed by Circuit Judge REYNA.
CLEVENGER, Circuit Judge.
Evergreen Solar, Inc. and Eagle Metal Distributors, Inc. (collectively, the “Appellants”) appeal the final decision of the United States Court of International Trade sustaining the final all-others countervailing duty rate set by the Department of Commerce (“Commerce”) in an investigation of aluminum extrusions imported from the People’s Republic of China. MacLean-Fogg Co. v. United States, 885 F.Supp.2d 1337 (Ct. Int’l Trade 2012) (“MacLean-Fogg IV”). We have jurisdiction under 28 U.S.C. § 1295(a)(5). Because the Court of International Trade did not interpret the relevant statute correctly, we reverse.
I
When Commerce conducts a countervailing duty investigation of particular merchandise in a market involving a large number of exporters and producers, the countervailing duty statute authorizes it to select a sample of exporters and producers for individual investigation. 19 U.S.C. § 1677f-l. The countervailing duty statute provides in § 1671d for the calculation of an “all-others” countervailing duty rate which applies to exporters or producers who are not individually investigated. Exporters or producers who are initially selected by Commerce are called mandatory respondents. Mandatory respondents who cooperate with Commerce’s investigation are given countervailing duty rates particular to their individual circumstances. Mandatory respondents who fail to cooperate to the best of their ability are given rates determined under § 1677e(b) using adverse facts available (“AFA”). Exporters or producers who are not initially selected for investigation and who wish to participate may supply the necessary information to Commerce to calculate individual countervailing duty rates for them. Such exporters or producers are called voluntary respondents. “All-others” are those exporters or producers not examined as initial selectees or as voluntary respondents.
The general rule for calculation of the all-others countervailing duty rate specifies that the rate will be “an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and de minimis countervaila-ble subsidy rates, and any rates determined entirely under section 1677e of this title.” § 1671d(c)(5)(A)(i). There is an exception to the general rule for calculation of the all-others rate. The exception comes into play “[i]f the countervailable subsidy rates established for all exporters and producers individually investigated are zero or de minimis rates, or are determined entirely under section 1677e.” § 1671 d(c)(5)(A)(ii). When the exception is applicable, the statute permits Commerce to “use any reasonable method to establish an all-others rate for exporters and producers not individually investigated.” Id.
*1239 This case arose from a countervailing duty investigation of aluminum extrusions from the People’s Republic of China, pursuant to a petition filed by Appellee Aluminum Extrusions Fair Trade Committee. There are three categories of exporters or producers in this case. First, the three selected mandatory respondents who refused to cooperate and who consequently were awarded rates entirely under § 1677e. Second, the two voluntary respondents, who after individual investigation were awarded individual rates that reflected their own particular circumstances. And third, the all-others, some of whom are the Appellants, who challenge the legality of the all-others rate Commerce established in this case.
To establish the all-others rate, Commerce first discarded the AFA rate assigned to the three mandatory respondents — correctly so, because the all-others rate statute mandates exclusion of rates determined entirely under § 1677e. Next, Commerce excluded the individual rates assigned to the voluntary respondents, relying on 19 C.F.R. § 351.204(d)(3), which expressly requires exclusion of countervail-able subsidy rates for voluntary respondents from the calculation of the all-others rate. Having excluded the voluntary respondents’ countervailing duty rates, Commerce had nothing left with which it could calculate the all-others rate under the general rule, 19 U.S.C. § 1671d(c)(5)(A)(i). Commerce thus turned to the process of “us[ing] any reasonable method to establish an all-others rate for exporters and producers not individually investigated” under the exception rule. § 1671d(c)(5)(A)(ii). Commerce decided to impose the 374.15% rate, the AFA rate assigned to the noncooperating mandatory respondents, on all-others as a reasonable method.
Four domestic importers and one exporter of extruded aluminum challenged Commerce’s action in the Court of International Trade. The plaintiffs argued that 19 U.S.C. § 1677d was plain on its face in requiring Commerce to use countervailing duty rates for voluntary respondents in calculating the all-others rate, and that Commerce’s regulation to the contrary was unlawful. The plaintiffs also challenged the 374.15% rate as resulting from an unreasonable method.
The Court of International Trade concluded that § 1677d is ambiguous on the question of whether countervailing duty rates assigned to voluntary respondents should be included in the calculation of the all-others rate, and that Commerce’s regulation is reasonable and thus enforceable. Maclean-Fogg Co. v. United States, 836 F.Supp.2d 1367, 1373-74 (Ct. Int’l Trade 2012) (“MacLean-Fogg I ”). The Court of International Trade however deemed the method that produced the 374.15% unnecessarily punitive and therefore unreasonable, and remanded the case to Commerce to recalculate the all-others rate. Id. at 1375-76. On reconsideration, the Court of International Trade reiterated its conclusion that the relevant statute is ambiguous and that the regulation is valid. MacLean-Fogg Co. v. United States, 853 F.Supp.2d 1253, 1256 (Ct. Int’l Trade 2012) (“MacLean-Fogg II ”).
After further rounds of litigation at the Court of International Trade, Commerce arrived at a “reasonable method” for establishing the all-others rate, settling on a AFA-based rate of 137.65%. MacLean-Fogg Co. v. United States, 853 F.Supp.2d 1336, 1341 (Ct. Int’l Trade 2012) (“MacLean-Fogg III ”); MacLean-Fogg IV, 885 F.Supp.2d at 1343. The all-others rate of 137.65%, sustained by the Court of International Trade, was obtained by subtracting the contributions of subsidy programs *1240 specific to the voluntary respondents from the 374.15% rate previously given to the mandatory respondents based on all subsidy programs.
Appellants challenge the Court of International Trade’s conclusions in MacLeau-Fogg I and II, arguing that the countervailing duty statute is clear on its face in providing that the rates of any exporter or producer who is individually investigated must be included in the calculation of the all-others rate under the general rule. They point out that the voluntary respondents were individually investigated, and indeed received rates particular to their individual circumstances. Because the statute unambiguously provides for inclusion of voluntary respondents’ rates in the calculation of the all-others rate, Appellants maintain that there is no room for regulatory interpretation of the statute and that 19 C.F.R. § 351.204(d)(3) therefore cannot lawfully take away what the statute gives: inclusion of voluntary rates in calculating the all-others rate.
Appellants also attack the Court of International Trade’s conclusions in Mac-Lean-Fogg III and IV about the methodology used to arrive at the all-others rate. They maintain that the statute does not permit direct application of the adverse inference rate as the all-others rate and also that the all-others rate imposed was not reasonable under the particular circumstances of this case.
We agree with Appellants that the statute unambiguously requires that the rates of any individually investigated exporter or producer be included in the calculation of the all-others rate under the general rule. We hold that 19 C.F.R. § 351.204(d)(3) is invalid and reverse the judgment of the Court of International Trade, remanding for a proper determination of the all-others rate under the general rule. We do not reach the question as to whether the methodology used by Commerce to determine the all-others rate was reasonable under the exception rule.
II
The central question on appeal is whether 19 U.S.C. § 1671d is ambiguous on the issue of whether voluntary respondent rates are to be included in the calculation of the all-others rate under the general rule. In Chevron analysis terms, Congress spoke directly to this question, and as explained below its intent is clear. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
§ 1671d states, in relevant part:
the all-others rate shall be an amount equal to the weighted average counter-vailable subsidy rates established for exporters and producers individually investigated, excluding any zero and de minimis eountervailable subsidy rates, and any rates determined entirely under section 1677e of this title....
If the eountervailable subsidy rates established for all exporters and producers individually investigated are zero or de minimis rates, or are determined entirely under section 1677e of this title, the administering authority may use any reasonable method to establish an all-others rate for exporters and producers not individually investigated....
§ 1671d(c)(5)(A)(i)-(ii).
The Court of International Trade held that the statute is ambiguous in Maclean-Fogg I. First, it looked to the fact that § 1671(c)(5)(A)© recites that “the all-others rate ... be an amount equal to the weighted average eountervailable subsidy rates established for exporters and producers individually investigated” without use of the word “all” to modify “exporters and producers individually investigated.” *1241 Maclean-Fogg I, 836 F.Supp.2d at 1373. Second, it reasoned that the statute lacked a “clear[ ] specification]” as to “which particular subset of respondents Commerce is to rely upon when setting the all-others rate” because there is no definition of the term “individually investigated” within the statute. Id. Finally, the Court of International Trade identified within § 1677f-1, which provides that the individual rates determined for mandatory respondents “shall be used to determine the all-others rate under section 1671d(c)(5),” a “suggestion] that Congress intended for Commerce to, in some reasonable way, use rates from mandatory respondents when calculating the all-others rate under section 1671d.” Id.
The Court of International Trade revisited the perceived ambiguity of “individually investigated” in MacLean-Fogg II. Appellants pointed to the consistent use of “investigate” within the Statement of Administrative Action Accompanying the Uruguay Round Agreements Act (“Statement of Administrative Action”) in reference to voluntary respondents to show that “exporters and producers individually investigated” include the voluntary respondents. The Court of International Trade acknowledged the Appellants’ argument, but upheld its earlier conclusion. In its words, “it does not follow that a neutral verb such as ‘investigate’ ... always includes voluntary respondents in its scope.” MacLean-Fogg II, 853 F.Supp.2d at 1256.
Commerce argued to the Court of International Trade that its regulation is reasonable. First, relying on the view that the statute is ambiguous on whether to count the countervailing duty rates of voluntary respondents when calculating the all-others rate, Commerce postulated that voluntary respondents and mandatory respondents should be viewed as proceeding on parallel tracks within the same countervailing duty investigation. Cooperating mandatory respondents would be investigated and given particular rates that would be factored into an all-others rate under the terms of § 1677d. Voluntary respondents would likewise be investigated and given individual rates, but in a parallel proceeding in which their rates would be excluded from the all-others calculation. Because Commerce saw the statute as ambiguous on whether voluntary respondent rates are included in calculating the all-others rate, it considered itself free in effect to conduct parallel proceedings for voluntary respondents. Such made sense, according to Commerce, because otherwise there was a risk that the rates of the voluntary respondents would reduce the all-others rate that would prevail if only the rates of mandatory respondents were considered. Commerce predicted, without any actual evidence, that voluntary respondents would be motivated to seek individual rates only when they had some real-world expectation that their individual rates would be less than the rates that Commerce would determine for mandatory respondents. Commerce’s justification for its rejection was deemed reasonable by the Court of International Trade, which noted the court’s obligation to uphold Commerce’s interpretation “even if the court does not believe it to be the best statutory interpretation.” Maclean-Fogg I, 836 F.Supp.2d at 1372 n. 7.
Ill
With regard to the treatment of voluntary respondents, Congress spoke directly in § 1677m, which states in relevant part:

(a) Treatment of voluntary responses in countervailing or antidumping duty investigations and reviews

In any investigation ... in which the administering authority has, under ... section 1677f-l(e)(2)(A) of this title ..., *1242 limited the number of exporters or producers examined ... the administering authority shall establish an individual eountervailable subsidy rate ... for any exporter or producer not initially selected for individual examination under such sections who submits to the administering authority the information requested from exporters or producers selected for examination, if—
(1) such information is so submitted by the date specified ... for exporters and producers that were initially selected for examination ... and
(2) the number of exporters or producers who have submitted such information is not so large that individual examination of such exporters or producers would be unduly burdensome and inhibit the timely completion of the investigation.
The statute is clear that voluntary respondents are “exporters or producers” subject to “individual examination.” The rates calculated for them are “individual eountervailable subsidy rate[s].” Within the countervailing duty statute, “investigation”/“examination” and “investigated”/“examined” are used interchangeably.
For example, 19 U.S.C. § 1677f — 1(e)(2), which provides Commerce with the authority for determining the eountervailable subsidy rates by sampling, states that Commerce may “limit[ ] its examination ” where there is a “large number of exporters or producers involved in the investigation or review.” (emphases added). The Statement of Administrative Action, by statute the “authoritative expression by the United States ... in any judicial proceeding in which a question arises concerning such interpretation or application” of the countervailing duty statute, § 3512(d), also mixes “investigate/investigation” and “examine/examination.” See, e.g., H.R. DOC. NO. 103-316, vol. 1, at 873 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4201 (“... in cases where Commerce has limited its examination to selected exporters and producers, it nevertheless will calculate an individual dumping margin for any exporter or producer not selected for examination that provides the necessary information on a timely basis and in the form required. Although Commerce ... will not discourage voluntary responses and will endeavor to investigate all firms that voluntarily provide timely responses in the form required, in certain cases ... where the number of exporters or producers is particularly high, Commerce may decline to analyze voluntary responses because it would be unduly burdensome and would preclude the completion of timely investigations or reviews.” (emphases added)).
Indeed, § 1677m describes the limited number of mandatory respondents as having been “examined” during the “investigation.” The language of 19 U.S.C. § 1671d(c)(l)(B)(i)(I) lends further support to the statutory construction here. It states that “[Commerce] shall ... determine an estimated individual countervaila-ble subsidy rate for each exporter and producer individually investigated, and ... an estimated all-others rate for all exporters and producers not individually investigated....’^ 1671d(c)(l)(B)(i)(I). The two voluntary respondents in this case were individually investigated and received their individual eountervailable subsidy rates accordingly. Because § 1677m(a) recites that the rates of voluntary respondents are “individual eountervailable subsidy rate[s],” the voluntary respondents must be understood to be “exporter[s] and pro-ducerfs] individually investigated.”
Beyond examining the meaning of words, it is also instructive to consider the statutory conflict that would result if “exporters and producers individually investí- *1243 gated” were construed not to include the voluntary respondents. On one hand, § 1671d(c)(l)(B)(i) provides that Commerce “shall ... determine an estimated all-others rate for all exporters and producers not individually investigated.” (emphasis added). On the other hand, § 1677m recites that Commerce “shall establish an individual countervailable subsidy rate ... for any exporter or producer not initially selected for individual examination ... who submits ... the information requested from exporters or producers selected for examination,” i.e., for the voluntary respondents, (emphasis added). The construction adopted by the Court of International Trade would mean that Commerce “shall” impose on the voluntary respondents both the “individual countervail-able subsidy rate” under § 1677m and the all-others rate under § 1671d(e)(l)(B)(i). That is an impossible result. The Court of International Trade accidentally created a conflict in the statute where none exists.
Were there need for more, as a matter of the plain meaning of words, there is no ambiguity in the word “individually” or in the word “investigated.” In the context of the countervailing duty statute, there is no possible doubt that a voluntary respondent who receives his individual rate has undergone “individual investigation.”
In Maclean-Fogg I, the Court of International Trade found an ambiguity on the basis that the general rule for calculating the all-others rate did not explicitly state that the rates of “all” exporters and producers individually investigated be included. 836 F.Supp.2d at 1373. This reasoning lacks support because the general rule itself specifies its own exclusions: “any zero and de minimis margins, and any margins determined entirely on the basis of the facts available.” § 1671d(c)(5)(A)(i). The existence of exclusions means that Congress intended all “weighted average countervailable subsidy rates established for exporters and producers individually investigated” be factored into the calculation unless the conditions for exclusion are met.
For the same reason, the Court of International Trade erred in stating that the statute “does [not] clearly specify which particular subset of respondents Commerce is to rely upon when setting the all-others rate.” Maclean-Fogg i, 836 F.Supp.2d at 1373. By setting forth exclusions, Congress must be understood to intend that the rates of all individually investigated respondents be relied upon unless the rates fall within one of the exclusions.
We also conclude that ambiguity cannot be found in the specific method for calculating the all-others rate under § 1671d simply because § 1677f — 1 (e)(2) provides that the rates calculated for mandatory respondents “shall be used to determine the all-others rate under section 1671d(c)(5) of this title.” Section 1671d(c)(5) itself limits § 1677f-l(e)(2) by excluding from the all-others rate calculation any mandatory respondent rate that is zero, de minimis or determined using AFA, which demonstrates that the specific all-others rate calculation statute governs the determination of the all-others rate. The fact that some rates determined for mandatory respondents shall be used in calculating the all-others rate does not suggest that rates determined for individually investigated voluntary respondents must be excluded from the calculation of the all-others rate.
The Court of International Trade in MacLean-Fogg II did consider the use of the word “investigate” in the Statement of Administrative Action to refer to the voluntary respondents, but regarded it as a “neutral verb” which does not always include voluntary respondents in its scope. *1244 853 F.Supp.2d at 1256. “Investigate,” by itself alone, may be neutral, but the disputed term, “exporters and producers individually investigated,” is not. Given that § 1671d repeatedly refers to “exporters and producers individually investigated” and “exporters and producers not individually investigated,” the language “exporters and producers individually investigated” must be understood to be a term of art. That the Statement of Administrative Action would refer to a specific group of respondents with the word “investigate” is therefore of critical importance to understanding whether “exporters and producers individually investigated” encompasses such respondents.
We thus conclude that the Court of International Trade erred in holding that the statute is ambiguous on the question of whether the countervailing duty rates (other than zero or de minimis) of voluntary respondents must be included in the general rule for calculation of the all-others rate. Because the statute is clear that such voluntary respondent rates must be included in the general all-others rate calculation, Commerce’s regulatory interpretation to the exact contrary is invalid. Commerce’s rationale for its regulation is therefore irrelevant and cannot serve to create ambiguity where none exists.
IV
The legislative history confirms that voluntary respondents are individually investigated. As the House Report explains,
Section 264. Determination of counter-vailable subsidy rate

Present law

Section 703(d)(1) of the Act [codified as 19 U.S.C. § 1671b(d)(1) ] currently provides that Commerce shall, if its preliminary [countervailing duty] determination is affirmative, order the suspension of liquidation of all entries of merchandise subject to the determination.... Explanation of provision
Section 264(a) of H.R. 5110 amends section 703(d)(1) of the Act to provide that when Commerce issues an affirmative preliminary [countervailing duty] determination, it will determine an individual countervailable subsidy rate to be applied to each exporter and producer individually investigated and an “all-others” rate to be applied to those exporters and producers who were not individually investigated.... Section 705(c)(1)(B) [codified as 19 U.S.C. § 1671d(c)(l)(B) ] would apply similar rules to affirmative final [countervailing duty] determinations.
Section 264(b)(2) of H.R. 5110 amends section 705(c) of the Act to establish rules for calculating the all-others rate and the country-wide subsidy rate. Reasons for change
The change is necessary to conform U.S. law to the Agreement.
H.R. Rep. NO. 103-826, at 118 (1994). See also Statement of Administrative Action, H.R. DOC. NO. 103-316 at 873, reprinted in 1994 U.S.C.C.A.N. at 4201 (“Recognizing the impracticality of examining all producers and exporters in all cases[,] Article 9.4 of the Antidumping Agreement permits the use of an all others rate to be applied to noninvestigated firms.... [S]ection 735(c)(5)(A) to the Act [codified as 19 U.S.C. § 1673d(c)(5)(B) ] ... provides that the all others rate will be equal to the weighted average of individual dumping margins calculated for those exporters and producers that are individually investigated, exclusive of any zero and de minimis margins, and any margins determined entirely on the basis of the facts available.”).
The legislative history confirms that those who are “individually investigated” receive an “individual countervailable sub *1245 sidy rate” and those who are “not individually investigated” receive an “all-others” rate. 19 U.S.C. § 1677m(a) recites that voluntary respondents receive an “individual countervailable subsidy rate.” Consequently, they are “individually investigated” within the meaning of § 1671d(c)(5)(A). There is no room for an alternative understanding.
V
It is further instructive to consider the history of the countervailing duty statute, because, as the Statement of Administrative Action provides, “[19 U.S.C. § 1677m, the voluntary respondent provision,] generally codifies existing practice.” H.R. DOC. NO. 103-316 at 873, reprinted in 1994 U.S.C.C.A.N. at 4201.
Prior to the amendments to the Tariff Act in 1994, an all-others rate did not exist. Instead, a country-wide duty rate, “equal to the amount of the net subsidy determined or estimated to exist,” “shall presumptively apply to all merchandise of such class or kind exported from the country investigated.” 19 U.S.C. § 1671e(a) (1986) (amended 1994). Even with this presumption, however, “differing countervailing duties” may be provided when “the administering authority determines there is a significant differential between companies receiving subsidy benefits.” Id. Unlike the statute as it is today, the countervailing statute did not state how a countrywide duty rate is to be “determined or estimated to exist” or how individual rates are to be tabulated to ascertain “a significant differential.” See Ipsco, Inc. v. United States, 899 F.2d 1192, 1195-96 (Fed.Cir.1990).
However, “[t]he regulations require Commerce to determine, to the extent practicable, if a producer received a significantly different net subsidy, by comparing the net subsidy received by the producer with the weighted-average net subsidy calculated on a country-wide basis.” Kajaria Iron Castings Pvt. Ltd. v. United States, 156 F.3d 1163, 1177 (Fed.Cir.1998) (applying the law as it was prior to the 1994 amendments (citing 19 C.F.R. § 355.22(d)(1) (1992))). Accordingly, the regulations set forth the “[c]alculation of individual rates.” 19 C.F.R. § 355.20(d) (1993). “If the Secretary decides that an individual ... producer or exporter received a significantly different net subsidy, ... the Secretary will state ... an individual estimated net subsidy for that person.” § 355.20(d)(2) (1993).
The regulations also set forth a mechanism for producers and exporters to apply for exemption to the presumptive countrywide rate. § 355.14(a) (1993) (“Any producer or exporter ... which desires exclusion from a countervailing duty order must submit to the Secretary ... an irrevocable written request for exclusion.”). “The Secretary will investigate requests for exclusion to the extent practicable in each investigation.” Id. If investigated, these producers and exporters will get an “individual rate, calculated in accordance with paragraph (d) of [the aforementioned § 355.20 (1993) ], [which] will be either the weighted-average net subsidy calculated on a countrywide basis or the individual rate calculated for that person.” § 355.20(e) (1993).
The producers and exporters whose “requests for exclusion” from the presumptive country-wide rate are “investigated]” and who receive an “individual rate” are the forerunners of the voluntary respondents. §§ 355.14, 355.20 (1993). To the extent that the countervailing duty statute codifies this existing practice, it also codifies that voluntary respondents are “individually investigated” within the meaning of the statute.
*1246 In addition, in the pre-1994 regime, rates calculated for producers and exporters investigated and assigned individual rates were factored into calculation of the country-wide rate. For example, in Kaja-ría Iron Castings, producers who received the country-wide rate challenged the method of calculating that rate. Commerce had, pursuant to its regulations, determined that three producers had received a “significantly different net subsidy” from the country-wide rate Commerce had calculated based on information obtained from all the companies investigated. 156 F.3d at 1166. The significantly different net subsidies were 0%, 41.75%, and 16.14% compared to the country-wide subsidy rate of 5.53%. Id. The challengers argued that the higher net subsidy rates established for the individual companies should have been excluded from the calculation of the country-wide rate. We rejected that challenge, Kajaria Iron Castings, 156 F.3d at 1177, relying on our previous decision in Ipsco, 899 F.2d 1192. In Ipsco, in calculating the country-wide rate, Commerce excluded the Canadian producers who received no countervailable subsidy (zero rate countervailing duty) or de minimis subsidies from the country-wide rate calculation. We sustained the challenge to Commerce’s methodology, holding that the rates of all companies, including those receiving no or de minimis subsidies must be included in the country-wide average net subsidy rate. 899 F.2d at 1196.
The law and regulations as they were before 1994 thus contemplated that Commerce would assign individual countervailing duty rates to individually investigated producers, and would include any such rates in the calculation of the country-wide rate.
VI
Accordingly, “exporters and producers individually investigated” in the context of 19 U.S.C. § 1671d(c)(5)(A) must be read to encompass the voluntary respondents. On the current facts, the precondition for invoking the exception provision, that “the countervailable subsidy rates established for all exporters and producers individually investigated are zero or de minimis rates, or are determined entirely under section 1677e of this title,” has not been met. § 1671d(c)(5)(A)(ii). We reverse the decision of the Court of International Trade and remand for determination of the all-others rate under the general rule, § 1671d(c)(5)(A)(i).
REVERSED AND REMANDED
Costs
No costs.