Slip Op. 16 - 86

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CAPELLA SALES & SERVICES LTD., | |
| Plaintiff, | Before: Donald C. Pogue, Senior Judge |
| v. | |
| UNITED STATES, | Court No. 15-00318 |
| Defendant. | |

OPINION

[Action dismissed for failure to state a claim upon which relief can be granted.]

Dated: September 14, 2016

Irene H. Chen, Chen Law Group, LLC, of Rockville, MD, and Mark B. Lehnardt, Lehnardt & Lehnardt, LLC, of Liberty, MO, for the Plaintiff.

Aimee Lee, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the Defendant. Also on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel were Jessica M. Link, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC, and Edward N. Maurer, Deputy Assistant Chief Counsel, International Trade Litigation, U.S. Customs & Border Protection, of New York, NY.

Alan H. Price, Robert E. DeFrancesco, III, and Derick G. Holt, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor.

**Pogue, Senior Judge**: In this action, Capella Sales & Services Ltd. ("Plaintiff" or "Capella")[1] again[2] challenges the assessment of countervailing duties ("CVD"), at the rate of 374.15 percent ad valorem, on four of its entries of aluminum extrusions from the PRC. The U.S. Department of Commerce ("Defendant" or "Commerce") assessed these duties by applying the all-others rate calculated in Aluminum Extrusions from the [PRC], 76 Fed. Reg. 18,521 (Dep't Commerce Apr. 4, 2011) (final affirmative countervailing duty determination) ("Final CVD Determination"), rather than the (lower) "lawful [cash] deposit rate" calculated subsequently on remand and redetermination of the same Final CVD Determination pursuant to litigation to which Capella was not a party. Compl., ECF No. 3, at ¶¶ 56, 58.

The result in this second action is directed by the Court's opinion in Capella I: Because Capella's complaint challenges Commerce's administration and enforcement of a CVD rate, the court has jurisdiction under 28 U.S.C. § 1581(i) (2012). However, because Plaintiff did not participate in, and have liquidation of its entries enjoined pursuant to, the litigation that resulted in the "lawful rate" calculated on

---

[1] Capella is "an importer of aluminum extrusions" from the People's Republic of China ("PRC"). Compl., ECF No. 3, at ¶ 50.

[2] In Capella Sales & Servs., Ltd. v. United States, __ CIT __, Slip Op. 16-72 (July 20, 2016)("Capella I"), the court, pursuant to USCIT Rule 12(b)(6), dismissed Capella's first challenge for failure to state a claim upon which relief can be granted.

remand and redetermination, it cannot claim entitlement to that rate for entries made prior to the effective date of the revised rate. See 19 U.S.C. §§ 1516a(c)(1), 1516a(e) (2012); Compl., ECF No. 3, at ¶ 7; cf. Capella I, __ CIT at __, Slip Op. 16-72 at 3. Plaintiff has, therefore, failed to state a claim upon which relief can be granted. USCIT Rule 12(b)(6).

## BACKGROUND

The background of this case is, in almost all respects, identical to the background provided in the Court's opinion in Capella I, __ CIT at __, Slip. Op. 16-72 at 3-11. For ease of reference, we note here only that Commerce's underlying CVD determination on aluminum extrusion from the PRC calculated an all-others rate of 374.15 percent ad valorem. Final CVD Determination, 76 Fed. Reg. at 18,523. Pursuant to the associated CVD Order, Commerce instructed U.S. Customs and Border Protection ("Customs") to collect cash deposits for non-individually investigated companies at that all-others rate. Aluminum Extrusions from the [PRC], 76 Fed. Reg. 30,653, 30,655 (Dep't Commerce May 26, 2011) (countervailing duty order) ("CVD Order"). Some respondents appealed this determination to this Court in MacLean-Fogg v. United States, Consol. Ct. No. 11-

00209,[3] as a result of which, after multiple judicial opinions,[4] including an appeal to the Court of Appeals for the Federal Circuit ("CAFC"),[5] and agency redeterminations,[6] the all-others rate was reduced to 7.37 percent (the post-MacLean-Fogg rate). [Fourth] Results of Redetermination Pursuant to Ct. Remand, Consol. Ct. 11-209, ECF Nos. 124-1 (conf. ver.) & 125-1 (pub. ver.).

While the above was ongoing, Capella made four entries of aluminum extrusions from the PRC – two on November 28, 2011, one on March 20, and one on June 16, 2012. Capella mistakenly

---

[3] See Summons, Consol. Ct. No. 11-209 ECF No. 1; Compl., Consol. Ct. No. 11-209, ECF No. 6; see also Order, Consol. Ct. No. 11-209 ECF No. 26 (consolidation order). This Court had jurisdiction under 28 U.S.C. § 1581(c). See MacLean-Fogg Co. v. United States, __ CIT __, 836 F. Supp. 2d 1367, 1369-70 (2012).

[4] MacLean-Fogg Co. v. United States, __ CIT __, 836 F. Supp. 2d 1367, on reconsideration in part, __ CIT __, 853 F. Supp. 2d 1253 (2012); MacLean-Fogg Co. v. United States, __ CIT __, 853 F. Supp. 2d 1336 (2012); MacLean-Fogg Co. v. United States, __ CIT __, 885 F. Supp. 2d 1337 (2012)("MacLean-Fogg IV"); MacLean-Fogg Co. v. United States, __ CIT __, 32 F. Supp. 3d 1358 (2014); MacLean-Fogg Co. v. United States, __ CIT __, 100 F. Supp. 3d 1349 (2015); MacLean-Fogg Co. v. United States, __ CIT __, 106 F. Supp. 3d 1356 (2015) ("MacLean-Fogg VIII").

[5] MacLean-Fogg Co. v. United States, 753 F.3d 1237 (Fed. Cir. 2014) ("MacLean-Fogg V").

[6] [First] Results of Redetermination Pursuant to Ct. Remand, Consol. Ct. No. 11-209, ECF Nos. 62-1 (pub. ver.) & 63 (conf. ver.); [Second] Results of Redetermination Pursuant to Ct. Remand, Consol. Ct. No. 11-209, ECF No. 80-1; [Third] Results of Redetermination Pursuant to Ct. Remand, Consol. Ct. No. 11-209, ECF No. 108-1; [Fourth] Results of Redetermination Pursuant to Ct. Remand, Consol. Ct. No. 11-209, ECF Nos. 124-1 (conf. ver.) & 125-1 (pub. ver.).

entered its merchandise as Type 01 (i.e., not subject to AD or CVD duties) rather than Type 03 (i.e., subject to AD or CVD duties). Compl., ECF No. 3, at ¶ 7; CBP Forms 7501 <u>reproduced in</u> Compl., ECF No. 3-1 at attach. 5; Protest, 4601-14-101149 (July 14, 2014), <u>reproduced in</u> Compl. ECF No. 3-1 at attach. 15.

Capella did not participate in the investigation underlying the <u>CVD Order</u> or the <u>MacLean-Fogg</u> litigation. Compl., ECF No. 3, at ¶ 7 ("Capella was unaware of the <u>CVD Order</u>."). Nor did Capella participate in the first administrative review of the <u>CVD Order</u>. <u>Id.</u> at ¶ 10 ("[Capella] was not aware of" the review and therefore "did not know to request a review"). Capella also did not participate in the second administrative review of the <u>CVD Order</u>. <u>Id.</u> at ¶ 22. Based on this lack of participation, Commerce instructed Customs to liquidate Capella's entries at their cash deposit rate. CBP Message No. 2209305 (July 27, 2012), <u>reproduced in</u> Compl., ECF No. 3-1 at attach. 6; CBP Message No. 3197305 (July 16, 2013), <u>reproduced in</u> Compl., ECF No. 3-1 at attach. 10.[7]

---

[7] Capella's four entries, being covered by the <u>CVD Order</u> but not subject to any administrative review or injunction in the pending the <u>MacLean-Fogg</u> litigation, were subject to automatic liquidation. <u>See</u> Compl., ECF No. 3, ¶¶ 13, 23. Three of Capella's four entries have already been liquidated; the fourth, Capella's June 16, 2012, entry had liquidation enjoined pending litigation in <u>Capella Sales & Services Ltd. v. United States</u>, Ct. No. 14-304. <u>Capella I</u>, __ CIT at __, Slip Op. 16-72 at 10 n. 14.

Capella filed its first action with this Court following the CAFC's decision in MacLean-Fogg V, 753 F.3d 1237. Summons, Ct. No. 14-304, ECF No. 1; Compl., Ct. No. 14-304, ECF No. 2. In that case, as here, Capella challenged Commerce's decision to assess the investigation rate, rather than a rate resulting from the MacLean-Fogg litigation, on its entries. See Capella I, __ CIT at __, Slip Op. 16-72 at 16, 18-19.

While Capella I was pending, Commerce made its fourth and final redetermination in MacLean-Fogg, establishing an all-others rate of 7.37 percent ad valorem. [Fourth] Results of Redetermination Pursuant to Ct. Remand, Consol. Ct. 11-209, ECF Nos. 124-1 (conf. ver.) & 125-1 (pub. ver.). This Court affirmed. Mac-Lean Fogg VIII, 106 F. Supp. 3d 1356. Between this affirmance and publication of Commerce's amended final CVD determination in the Federal Register, Capella sent a letter to Commerce arguing that "Commerce should adjust the effective date of the new all-others cash deposit rate of 7.37 percent to apply retroactively to all entries since [Aluminum Extrusions from the [PRC], 75 Fed. Reg. 54,302 (Dep't Commerce Sept. 7, 2010) (preliminary affirmative CVD determination)]." Letter from Capella to Commerce (Oct. 29, 2015) at 2, reproduced in Compl.,

ECF No. 3-1 at attach. 17; see Compl., ECF No. 3, at ¶ 35.[8]

Commerce did not adjust the effective date of the new all-others rate. Rather, Commerce published notice of the new all-others cash deposit rate with an effective date of November 2, 2015, Am. Final CVD Determination, 80 Fed. Reg. at 69,640-41,[9] and issued corresponding instructions to Customs.[10] Commerce also issued instructions to Customs to refund cash deposits made in excess of the new rate for entries made before the new cash deposit instructions (November 13, 2015) but after the effective

---

[8] Capella's letter constitutes what Capella claims to be a procedural difference between Capella's challenge here, to the Aluminum Extrusions from the [PRC], 80 Fed. Reg. 69,640 (Dep't Commerce Nov. 10, 2015) (amended final affirmative CVD determination pursuant to court decision) ("Am. Final CVD Determination") and Capella's challenge in Capella I, to Aluminum Extrusions from the [PRC], 77 Fed. Reg. 74,466 (Dep't Commerce Dec. 14, 2012) (notice of court decision not in harmony with final affirmative CVD determination and notice of amended final affirmative CVD determination). Compare Compl., ECF No. 3, at ¶¶ 35, 38, 51 with Am. Compl., Ct. No. 14-304, ECF No. 32-1. As explained below, see note 17, it is a difference of no moment.

[9] This is the final "Timken Notice" for MacLean-Fogg, Consol. Ct. No. 11-209. Am. Final CVD Determination at 69,640 (citing Diamond Sawblades Mfrs. Coal. v. United States, 626 F.3d 1374 (Fed. Cir. 2010) (clarifying Timken Co. v. United States, 893 F.2d 337 (Fed. Cir. 1990)).

[10] See CBP Message No. 5317319 (Nov. 13, 2015) ("Cash Deposit Instructions"), reproduced in Compl., ECF No. 3-1 at attach. 18 ("As a result of [MacLean-Fogg VIII, __ CIT __, 106 F. Supp. 3d 1356], for shipments of aluminum extrusions from the [PRC] entered, or withdrawn from warehouse, for consumption on or after 11/02/2015, [Customs] shall require, for [all others rate] entries, a cash deposit equal to [7.37 percent ad valorem].").

date (November 2, 2015).[11]

Capella then filed its second action – the instant action – again challenging the CVD rate assessed on its four entries. Summons, ECF No. 1; Compl., ECF No. 3. Capella challenges Commerce's Am. Final CVD Determination, 80 Fed. Reg. 69,640, the corresponding Cash Deposit Instructions, ECF No. 3-1 at attach. 17, and Refund Instructions, ECF No. 3-1 at attach. 19, as "arbitrary, capricious, and [an] abuse of discretion, or otherwise not in accordance with law" for failing to apply, retroactively to Capella's entries, "the lawful [cash] deposit rate," that is the post-MacLean-Fogg rate of 7.37 percent ad valorem. Compl., ECF No. 3, at ¶¶ 56, 58; see Am. Final CVD Determination, 80 Fed. Reg. at 69,641.

The Defendant's motion to dismiss is now before the court.  Def.'s Mot. to Dismiss, ECF No. 27.[12]

---

[11] CBP Message No. 5328301 (Nov. 24, 2015) ("Refund Instructions"), reproduced in Compl., ECF No. 3-1 at attach. 19.

[12] Defendant-Intervenor, the Aluminum Extrusion Fair Trade Committee ("AEFTC"), "concurs with and adopts by reference the arguments set forth in [Def.'s Mot. to Dismiss, ECF No. 27]." Def.-Intervenor [AEFTC]'s Resp. to Def.'s Mot. to Dismiss, ECF No. 28, at 1.

**DISCUSSION**

I.  Defendant's Motion to Dismiss Pursuant to USCIT Rule
    12(b)(1) For Lack of Subject Matter Jurisdiction[13]

As in Capella I, Capella claims jurisdiction here under 28 U.S.C. §§ 1581(i)(2), (4), Compl., ECF No. 3, at ¶ 38, framing its action as a challenge to Commerce's decision to not retroactively apply the "lawful [cash] deposit rate" calculated pursuant to the MacLean-Fogg litigation to Capella's entries, id. at ¶ 56.[14]  Defendant again moves to dismiss, under USCIT Rule 12(b)(1), asserting that Capella's action seeks to challenge the 374.15 percent rate itself and therefore requires jurisdiction under § 1581(c). Def.'s Mot. to Dismiss, ECF No. 27 at 19-22.

Defendant, however, fails to recognize the nature of Capella's claim.  Here, Capella challenges Commerce's "decision in the [Am. Final CVD Determination, 80 Fed. Reg. 69,640, Cash Deposit Instructions, ECF No. 3-1 at attach. 18, and Refund Instructions, ECF No. 3-1 at attach. 19] to apply the lawful

---

[13] See USCIT R. 12(b)(1) ("[A] party may assert the . . . defense[] of. . . lack of subject matter jurisdiction [by motion].").

[14] See 28 U.S.C. §§ 1581(i)(2), (4) (giving this Court "exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for" the "administration and enforcement" of "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue").

[cash] deposit rate" only prospectively, for entries made on or after November 2, 2015, given the "extreme disparity between" the 374.15 percent investigation rate and the post-MacLean-Fogg rate. Compl., ECF No. 3, at ¶ 56.[15] As explained more fully in Capella I, __ CIT at __, Slip Op. 16-72 at 11-17, Plaintiff challenges the administration and enforcement of that CVD rate, not the CVD rate itself – specifically, Capella seeks a change in who is retroactively entitled to the benefit of the post-MacLean-Fogg rate. See Compl., ECF No. 3, at ¶¶ 39, 56..[16]

As Plaintiff's action is therefore a challenge to the "administration and enforcement" of "[CVD] duties," see 28 U.S.C. §§ 1581(i)(2), (4), and "jurisdiction under another subsection of § 1581" is not available, Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992),[17] this

---

[15] See also id. at ¶ 58 (where Plaintiff reiterates its challenge to Commerce's decision in the Am. Final CVD Determination, 80 Fed. Reg. 69,640, to make the effective date of the post-MacLean-Fogg rate November 2, 2015).

[16] The court's analysis of jurisdiction considers the "[s]ubstance, not form" of the complaint, to determine the "true nature of the action." Williams v. Sec'y of Navy, 787 F.2d 552, 557 (Fed. Cir. 1986) (internal quotation marks and citation omitted); see Hutchison Quality Furniture, Inc. v. United States, Appeal No. 2015-1900, 2016 WL 3668030 at *4 (Fed. Cir. July 6, 2016) ("Determining the true nature of an action under § 1581 requires us to discern the particular agency action that is the source of the alleged harm so that we may identify which subsection of § 1581 provides the appropriate vehicle for judicial review." (citation omitted)).

[17] Plaintiff makes an ineffective attempt to claim jurisdiction under 28 U.S.C § 1581(c). Compl., ECF No. 3, at ¶¶ 1, 38

(footnote continued)

Court has jurisdiction over Plaintiff's action pursuant to 28

U.S.C. § 1581(i). Cf. Capella Sales & Services, Ltd. v. United

---

(asserting jurisdiction under § 1581(c)); Pl.'s Opp'n To Def.'s Mot to Dismiss, ECF No. 33 ("Pl.'s Resp."), at 21 n. 8.

Capella argues that because it "filed comments with Commerce regarding the effective date of the [Am. Final CVD Determination, 80 Fed. Reg. 69,640]," and "Commerce did not reject" those comments, Capella should be considered "a party to the proceeding" with standing to challenge the Am. Final CVD Determination, 80 Fed. Reg. 69,640, under § 1581(c). Pl.'s Resp., ECF No. 33, at 21 n. 8; see Compl., ECF No. 3, at ¶ 58.

"[A]ny interested party who was a party to the proceeding" before Commerce may challenge a final CVD determination before this Court. 28 U.S.C. § 2631(c); see 28 U.S.C. § 1581(c), 19 U.S.C. § 1516a(a)(2)(B)(i).  While Plaintiff is an interested party, as an importer of aluminum extrusions, see 19 U.S.C. § 1677(9)(A); Compl., ECF No. 3, at ¶ 50, it was not a party to the proceeding.   To be a "party to the proceeding" here, Plaintiff must have "actively participate[d], through written submissions of factual information or written argument, in a segment of [the CVD investigation]." 19 C.F.R. § 351.102(b)(36); see also JCM, Ltd. v. United States, 210 F.3d 1357, 1360 (Fed. Cir. 2000).  Plaintiff did not participate in any segment of the CVD investigation, but rather sent a letter to Commerce after the final determination, when proceedings on the question had already concluded. Diamond Sawblades Mfrs. Coal. v. United States, __ CIT __, 2016 WL 2858896, at *2 (May 11, 2016) ("[T]he Court of Appeals for the Federal Circuit has clarified that a remand determination becomes effective on the date that the agency files its determination with the court, not when the court sustains the remand determination.") (citing Diamond Sawblades Mfrs. Coal. v. United States, 626 F.3d 1374, 1378 n. 1 (Fed. Cir. 2010)); Compl., ECF No. 3, at ¶ 35 (explaining that Capella sent its "comments" to Commerce after the court had affirmed Commerce's final determination, MacLean-Fogg VIII, __ CIT __, 106 F. Supp. 3d 1356 (affirming [Fourth] Results of Redetermination Pursuant to Ct. Remand, Consol. Ct. No. 11-209, ECF Nos. 124-1 (conf. ver.) & 125-1 (pub. ver.)), but before Commerce filed notice of that affirmance in the Federal Register).  Accordingly, Plaintiff was not a party to the proceeding, cannot bring a claim pursuant to 19 U.S.C. § 1516a(a)(2)(B)(i), and cannot assert jurisdiction for its claim under 28 U.S.C. § 1581(c).

States, CIT Ct No. 14-304, Slip Op. 16-, (July , 2016); Snap-on, Inc. v. United States, __ CIT __, 949 F. Supp. 2d 1346, 1352 (2013). Whether Plaintiff is actually entitled to that "lawful rate" absent participation in the 19 U.S.C. § 1516a(a)(2)(B)(i) challenge that led to its adoption is another question,[18] as discussed below.

## II.  Defendant's Motion to Dismiss Pursuant to USCIT Rule 12(b)(6) For Failure to State a Claim[19]

As noted above, Plaintiff claims that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"[20] for Commerce to not retroactively apply

---

[18] Bell v. Hood, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." (citation omitted)); Special Commodity Grp. on Non-Rubber Footwear from Brazil, Am. Ass'n of Exps. & Imps. v. Baldridge, 6 CIT 264, 267, 575 F. Supp. 1288, 1292 (1983) ("Whether or not a complaint states a claim upon which relief may be granted should not be confused with the threshold question of the jurisdiction of the court over the subject matter.").

[19] See USCIT R. 12(b)(6) ("[A] party may assert the . . . defense[] [of] . . . failure to state a claim upon which relief can be granted [by motion].").

[20] Where the court has jurisdiction pursuant to 28 U.S.C. § 1581(i), it will uphold the agency's determination unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see 28 U.S.C. § 2640(e) (Actions brought under § 1581(i) are reviewed "as provided in [§] 706 of title 5.").

the post-MacLean-Fogg all-others rate (the "lawful [cash]
deposit rate") to Capella's entries, regardless of its failure
to participate in that litigation.  Plaintiff argues that its
claim is the result of the "extreme disparity" between the
applied all-others rate (374.15 percent ad valorem) and the
post-MacLean-Fogg all-others rate (7.37 percent ad valorem).
Compl., ECF No. 3, at ¶¶ 39, 56.

But, just as in Capella I, Plaintiff has failed to
present a "legally cognizable right of action." Bell Atl. Corp.
v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks and
citation omitted); see Capella I, __ CIT at __, Slip Op. 16-72
at 17-25.  Specifically, contrary to Plaintiff's arguments,[21] 19
U.S.C. §§ 1516a(c)(1), 1516a(e) expressly and unambiguously
instruct Commerce to assess the investigation rate, not the
post-MacLean-Fogg rate, on Plaintiff's entries.[22]

When Commerce issues a CVD order, the statute requires

---

[21] Plaintiff argues that use of the term "entries" in 19 U.S.C.
§§ 1516a(c)(1), (e) is ambiguous. Pl.'s Resp., ECF No. 33, at
28-32.  For discussion of this argument see note 26 below.

[22] Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1307-08
(Fed. Cir. 2004) ("Thus, under [19 U.S.C. § 1516a's] parallel
liquidation and injunction provisions, subject merchandise that
is entered prior to publication of the final decision of the
Court of International Trade or [the CAFC] is liquidated as
entered unless liquidation is enjoined.  In contrast,
merchandise entered after the final decision of the Court of
International Trade or [the CAFC] must be liquidated in
accordance with that final decision." (citing 19 U.S.C. §§
1516a(c), 1516a(e))).

"the posting of a cash deposit, bond, or other security . . .
for each entry of the subject merchandise in an amount based on
the [applicable] estimated [rate]," here, the all-others rate,
as calculated in the precipitating investigation. 19 U.S.C.
§ 1671d(c)(1)(B)(ii); see also id. at § 1671e(a)(3).  This
estimated rate is called the cash deposit rate.[23]  The cash
deposit rate is not necessarily the rate at which an entry is or
will be liquidated.[24]  Rather, it may be appealed to this Court.
19 U.S.C. § 1516a(a)(2)(A)(i)(II).  If such an appeal results in
a revised rate, then those entries for which liquidation is
enjoined pursuant to that appeal will be liquidated at the
revised rate. Id. at § 1516a(e)(2).  This is what the plaintiffs
in MacLean-Fogg, Consol. Ct. No. 11-209 accomplished for their
covered entries.[25]

_____

[23] See Decca Hosp. Furnishings, LLC v. United States, 30 CIT 357,
358, 427 F. Supp. 2d 1249, 1251 (2006) ("As mentioned, the cash
deposit rate is merely an estimate of the eventual liability
importers subject to an antidumping duty order will bear.
Because the rate established by the final determination is based
on past conduct, i.e., conduct occurring before the final
determination, interested parties to an antidumping duty
proceeding may ask Commerce to annually review the antidumping
duty order in light of an importer's current practices."
(citations omitted)).

[24] See Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d
1041, 1047 (Fed. Cir. 2012) ("[T]he cash deposits collected upon
entry are considered estimates of the duties that the importer
will ultimately have to pay as opposed to payments of the actual
duties.").

[25] See MacLean-Fogg VIII, 106 F. Supp. 3d at 1357 (ordering that
"any entries covered by Section 516A(e)(1) of the Tariff Act of
(footnote continued)

"Unless [] liquidation is enjoined by the court [in a pending appeal], entries of merchandise of the character covered by [Commerce's appealed] determination" that were entered "on or before the date of publication in the Federal Register by [Commerce] of a decision of the [USCIT or CAFC] not in harmony with that determination" are "liquidated in accordance with [Commerce's original] determination." 19 U.S.C. § 1516a(c)(1). Those entries for which "liquidation . . . was enjoined" or that were made "after the date of publication in the Federal Register" of the notice, are "liquidated in accordance with the final court decision in the action." Id. at § 1516a(e); see Snap-on, __ CIT at __, 949 F. Supp. 2d at 1354.[26]

---

1930, as amended, 19 U.S.C. § 1516a(e)(1) (2012), are to be liquidated in accordance with this judgment").

[26] Plaintiff argues that the "term 'entries' in 19 U.S.C. § 1516a(c)(1) is ambiguous," Pl.'s Resp., ECF No. 33, at 28, because the statute "is silent" as to whether § 1516a(c)(1) "extends to *all* remaining entries that entered on or before the date of the Timken Notice, or just to a subset of [] these entries," id. at 30, and § 1516a(e) "neither requires nor prevents the new rate of the final court decision from being applied retroactively to earlier entries," id. at 29 (emphasis original). Plaintiff believes that "[t]he omission of the word 'all'" from 19 U.S.C. § 1516a(c)(1) "removes the terms 'entries' from under the oft-cited rule that 'all means all.'" Id. (citing Knott v. McDonald's Corp., 147 F.3d 1065, 1067 (9th Cir. 1998)).

Try as Plaintiff might, "[a]mbiguity is a creature not of definitional possibilities but of statutory context." Brown v. Gardner, 513 U.S. 115, 118 (1994) (citation omitted). Plaintiff's "'all means all' rule" is not a rule at all, but a by-product of the plain meaning rule. Knott, 147 F.3d at 1067 (finding that use of the word "all" in a contract was unambiguous on the contract's face and therefore binding on the

(footnote continued)

In the alternative, or in addition, an interested party may challenge the cash deposit rate by requesting Commerce conduct an administrative review of its entries that were subject to that cash deposit rate – to calculate the actual rate. 19 U.S.C. § 1675(a)(1).  A review must be requested. Id.[27] If it is not, entries are liquidated at the cash deposit rate. 19 U.S.C. § 1675(a)(2)(C); Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d 973, 976–77 (Fed. Cir. 1994).

---

parties thereto).  And the plain meaning here leaves Plaintiff's arguments meritless.

Read as a whole, in context, 19 U.S.C. § 1516a is not silent or ambiguous, but rather plain and direct. See Robinson v. Shell Oil Co., 519 U.S. 337, 340-41 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." (citations omitted)).  Section 1516a(c)(1) provides that "entries" of subject merchandise made "on or before the date of publication in the Federal Register by [Commerce] of a [Timken Notice]" "shall be liquidated in accordance with [Commerce's] determination," "[u]nless such liquidation is enjoined by the court [in a pending appeal]." The language is clear and imperative.  Commerce "shall" liquidate entries matching the statutory description – subject to the order, made prior to the Timken notice, and un-enjoined in a pending litigation – in accordance with Commerce's determination.  This statutory directive is without ambiguity and Commerce is without discretion.  Section 1516a(e) lists which "entries" are to be "liquidat[ed] in accordance with [the] final [court] decision" in an appeal: those made "after the date of" the Timken Notice and "the liquidation of which was enjoined" pursuant to the appeal. 19 U.S.C. § 1516a(e).  The list is closed; Congress left no discretion to Commerce to expand it. *Expressio unius est exclusio alterius*.  Plaintiff's argument thus fails.

[27] See Asociacion Colombiana de Exportadores de Flores v. United States, 916 F.2d 1571, 1576 (Fed. Cir. 1990).

Plaintiff, by its own admission in its complaint, did not participate in the litigation challenging the Final CVD Determination rate, MacLean-Fogg, Consol. Ct. No. 11-209; liquidation of its entries was never enjoined pursuant to that litigation. See Compl., ECF No. 3, at ¶ 7.[28]  Further, and again by Plaintiff's own admission in its complaint, Plaintiff did not participate in either administrative review relevant to its entries. Compl., ECF No. 3, at ¶¶ 10, 22.[29]  Plaintiff has thereby "plead [it]self out of court by alleging facts that show there is no viable claim." Pugh v. Tribune Co., 521 F.3d 686, 699 (7th Cir. 2008) (citation omitted).  Specifically, by the plain statutory language "entries of merchandise of the

---

[28] Plaintiff asserts that it did not know about the Final CVD Determination, CVD Order, and subsequent first review because its customs broker did not advise it of such. Compl, ECF No. 3, at ¶¶ 7, 10.  However, publication in the Federal Register of the Final CVD Determination, CVD Order and opportunity for administrative review, see CVD Order, 76 Fed. Reg. 30,653; Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 77 Fed. Reg. 25,679, 25,680 (Dep't Commerce May 1, 2012) (providing notice of opportunity to request first administrative review); Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review, 78 Fed. Reg. 25,423, 25,424 (Dep't Commerce May 1, 2013) (providing notice of opportunity to request second administrative review), is "sufficient to give notice of the contents of the document to a person subject to or affected by it," 44 U.S.C. § 1507, such as Capella, see Deseado Int'l, Ltd. v. United States, 600 F.3d 1377, 1380 (Fed. Cir. 2010); Stearn v. Dep't of Navy, 280 F.3d 1376, 1384-85 (Fed. Cir. 2002); Royal United Corp. v. United States, 34 CIT 756, 767-68, 714 F. Supp. 2d 1307, 1318 (2010).

[29] Hemi Grp., LLC v. N.Y.C., 559 U.S. 1, 5 (2010) (holding that all the factual allegations in the complaint are taken as true).

character covered by" the Final CVD Determination, entered "on or before the date of publication in the Federal Register" of the Am. Final CVD Determination, for which "liquidation [has not been] enjoined" in the appeal of the Final CVD Determination, MacLean-Fogg, Consol Ct. No. 11-209, must be "liquidated in accordance with the [Final CVD Determination]," 19 U.S.C. §§ 1516a(c)(1), 1516a(e),[30] absent a request for administrative review, 19 U.S.C. §§ 1675(a)(1), 1675(a)(2)(C). All of Plaintiff's entries at issue here were made prior to the Am. Final CVD Determination, 80 Fed. Reg. 69,640, see CBP Forms 7501, reproduced in Compl., ECF No. 3-1 at attach. 5; Protest, 4601-14-101149 (July 14, 2014), reproduced in Compl., ECF No. 3-1 at attach. 15, and their liquidation was not enjoined pursuant to the MacLean-Fogg litigation, see Compl., ECF No. 3, at ¶ 7. Plaintiff did not seek administrative review of its entries. Id. at ¶¶ 10, 22.[31] Accordingly, the only lawful rate for

---

[30] See Asociacion Colombiana, 916 F.2d at 1577 ("We do not question the authority of [Commerce], pursuant to its regulation, to liquidate entries for an annual review period at the rate set in the original antidumping duty order when there has been no challenge to the validity of that order and no request for an annual review."); Snap-on, 949 F. Supp. 2d at 1354.

[31] Plaintiff's letter to Commerce, Letter from Capella to Commerce (Oct. 29, 2015), reproduced in Compl., ECF No. 3-1 at attach. 17, has no effect on this conclusion. It does not change the fact that Plaintiff did not participate in the underlying proceedings, see supra note 8, nor have liquidation of its entries enjoined pursuant MacLean-Fogg, Consol. Ct. No. 11-209.

Plaintiff's entries, the rate required by statute, is the rate as calculated in the <u>Final CVD Determination</u>, 374.15 percent ad valorem. <u>See</u> 19 U.S.C. §§ 1516a(c)(1), 1516a(e), 1675(a)(1), 1675(a)(2)(C).

"Congress has directly spoken to the precise question at issue," <u>Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837, 842 (1984), and Commerce, having complied with that directive for Plaintiff's entries, has made a determination in accordance with law, that is neither arbitrary and capricious[32] nor an abuse of discretion.[33] Plaintiff has "not based its claim for relief on a plausible legal theory." <u>Hutchison</u>, 2016 WL 3668030 at *5 n. 4. Its complaint must be dismissed for failure to state a claim upon which relief can be granted. USCIT Rule 12(b)(6).[34]

---

[32] <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983) ("Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.").

[33] <u>Star Fruits S.N.C. v. United States</u>, 393 F.3d 1277, 1281 (Fed. Cir. 2005) ("An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." (citation omitted)).

[34] Plaintiff's various other arguments regarding the reasonableness of Commerce's determination, <u>see</u> Pl.'s Resp., ECF

(footnote continued)

**CONCLUSION**

Because Plaintiff did not participate in the MacLean-Fogg litigation, and did not have liquidation of entries enjoined pursuant thereto, it cannot, claim entitlement to the rate as calculated therein on remand and redetermination.  19 U.S.C. §§ 1516a(c)(1), 1516a(e)(2); Compl., ECF No. 3, at ¶ 7. As such, Plaintiff has failed to state a claim upon which relief can be granted; Defendant's motion to dismiss under USCIT Rule 12(b)(6) is therefore granted.[35]  Judgment will be entered accordingly.

/s/Donald C. Pogue
Donald C. Pogue, Senior Judge

Dated: September 14, 2016
      New York, NY

---

No. 33, at 32-41, are, as such, irrelevant here. Where Congress has "directly spoken to the precise question at issue," where "the intent of Congress is clear," then "that is the end of the matter." Chevron, 467 U.S. at 842.  "[T]he court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43.

[35] Cf. Capella I, __ CIT __, Slip Op. 16-72.